**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SAMANTHA LEE-ANN SEALEY, | § | |
| *Plaintiff* | § | |
| | § | **SA-24-CV-00399-XR** |
| -vs- | § | |
| | § | |
| ARTURO MANCIAS,  SAN ANTONIO | § | |
| POLICE DEPARTMENT,  CITY OF SAN | § | |
| ANTONIO, | § | |
| *Defendants* | § | |

## ORDER ON MOTIONS TO DISMISS

Plaintiff has filed an amended complaint against the City of San Antonio, the San Antonio Police Department, and one of its officers, alleging violations of 42 U.S.C. § 1983. ECF No. 11. Defendants Arturo Mancias and the City of San Antonio filed separate motions to dismiss Plaintiff's First Amended Complaint. ECF Nos. 12, 13. Plaintiff filed responses to the motions, and both Defendants filed replies. ECF Nos. 15, 16, 17, 18. The Court has carefully reviewed the arguments, record, and applicable authorities, and hereby **GRANTS** the Defendants' motions to dismiss (ECF Nos. 12, 13).

## BACKGROUND

In reviewing a motion to dismiss, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581–82 (5th Cir. 2020). Here, the Court additionally considers video evidence of the incident giving rise to Plaintiff's claim (*see* ECF No. 9) because Plaintiff incorporated the video into her amended complaint (*see* ECF No. 11 at 3 n.2), the video is central to her claim, and both parties extensively discuss the video in their briefing. *See Terrell v. Town of Woodworth*, No. 23-30510, 2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (citing *Dorsey v. Portfolio Equities,*

*Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)) (finding that the district court properly considered video evidence of incident underlying § 1983 claim where Plaintiff incorporated the video into his complaint, consistently referenced the video, and the video evidence was central to his claims); *see also Mullins v. Medina County*, No. 5-21-CV-01292-FB-RBF, 2023 WL 5435628, at *1 (W.D. Tex. July 14, 2023) (considering video evidence of incident giving rise to § 1983 claim at motion to dismiss stage), *report and recommendation adopted*, No. SA-21-CA-1292-FB, 2023 WL 5436349 (W.D. Tex. Aug. 23, 2023). "The Court will only reject [Plaintiff's] version of events when it is obviously contradicted by the video evidence." *Id.* (cleaned up, citations omitted). Here, the video evidence is footage from Defendant Officer Arturo Mancias' body-worn camera ("BWC") on the night of the incident.

On October 2, 2022, at 10:17 p.m., Plaintiff Samantha Lee-Ann Sealey had just exited a 7-Eleven on 2618 South Zarzamora St., San Antonio, Texas, when San Antonio Police Department Officer Arturo Mancias approached and arrested her on an outstanding warrant for drug possession. *See* ECF No. 11 at 2; BWC at 22:17:39–22:18:28. At the time of her arrest, Plaintiff was accompanied by her friend, a gentleman named Santos. ECF No. 11 at 3.

Shortly after Officer Mancias arrested and handcuffed Plaintiff, another police officer arrived on the scene in a patrol car.[1] *See* BWC at 22:18:56–22:19:10. Officer Mancias escorted Plaintiff to the front of the patrol car and asked her if she had any weapons. *See* BWC at 22:19:10–22:19:15. Plaintiff responded that she had a syringe in her brassiere but was not otherwise carrying a weapon. *See* BWC at 22:19:15–22:19:23. Officer Mancias asked if Plaintiff was involved in "anything else other than possession," and she shook her head no. *See* BWC at 22:19:37–22:19:42.

---

[1] Plaintiff asserts multiple times that two officers other than Officer Mancias were present on scene. ECF Nos. 11 at 2; 15 at 4. However, the video contradicts this claim; only one other officer arrived on scene. *See* BWC at 22:18:56–22:19:10. The Court credits the video over Plaintiff's claim. *See Mullins*, 2023 WL 5435628, at *1.

Officer Mancias then turned to Plaintiff's friend Santos to tell him that he was going to take Plaintiff in on the warrant. *See* BWC at 22:19:53–58. It was at this point that Plaintiff suddenly began to run away through the parking lot behind the 7-Eleven, with her hands still handcuffed behind her back. *See* BWC at 22:19:59–22:20:01. Officer Mancias gave chase and quickly caught up to Plaintiff before she reached the edge of the parking lot. ECF No. 11 at 3. Plaintiff asserts that Officer Mancias then pushed her to the ground. ECF No. 11 at 4. Although Plaintiff acknowledges "it is impossible to determine with certainty" where Officer Mancias' arms were while he chased her, she argues that it is clear from the shadows of Plaintiff and Officer Mancias that he drew extremely close to her, with outstretched arms. ECF No. 11 at 4. Plaintiff then fell forward. ECF No. 11 at 4 (citing BWC at 22:20:02–22:20:03). As she fell, Plaintiff's upper torso "lurch[ed] forward," which she argues was "consistent with a push being applied somewhere on [her] upper back." ECF No. 11 at 4. Her friend Santos also claims to have seen Officer Mancias chase and push Plaintiff. ECF No. 11 at 5.

Plaintiff's head hit the hard concrete of the parking lot and she remained on the ground, bloody and barely conscious. ECF No. 11 at 4–5; *see also* BWC at 22:20:02–22:20:19. Officer Mancias immediately radioed dispatch and informed them that Plaintiff fell; he did not report any use of force. ECF No. 11 at 5. Plaintiff alleges that, because of the fall, she "sustained severe damage to her head" and "fell into a coma for over a month." ECF No. 11 at 5. At the time, Plaintiff avers she was three months pregnant, and endured a miscarriage due to this incident. ECF No. 11 at 5. She has not alleged that Officer Mancias was aware that she was pregnant.

On April 17, 2024, Plaintiff filed a complaint in this Court, alleging under 42 U.S.C. § 1983 that Defendants Arturo Mancias, the San Antonio Police Department, and the City of San Antonio violated her constitutional rights. *See* ECF No. 1 at 1–5. Defendants filed separate motions to

dismiss the complaint, which included an exhibit of Officer Mancias' body worn camera footage. *See* ECF Nos. 7, 8, 9. Defendant Mancias invoked a qualified immunity defense. ECF No. 7 at 1. However, these motions were subsequently mooted when Plaintiff filed an amended complaint on May 31, 2024, which incorporated the video footage by reference. *See* ECF No. 11 at 3 n.3; *see also* ECF Ents. June 3, 2024 (mooting the former motions to dismiss).

Plaintiff's amended complaint no longer identifies the San Antonio Police Department as a defendant. *See* ECF No. 11 at 1. Plaintiff acknowledges that she "erroneously named the San Antonio Police Department as a Defendant" in her original complaint. *See* ECF No. 11 at 1 n.1. As Defendant San Antonio Police Department pointed out in its motion to dismiss, this Court has previously found that the Department is a non-jural entity that cannot sue or be sued. *See* ECF No. 8 at 1 n.1; *see also Lone Star Chapter Paralyzed Veterans of Am. v. City of San Antonio*, No. SA-10-CV-316-XR, 2010 WL 3155243, at *1–2 (W.D. Tex. Aug. 5, 2010) (Rodriguez, J.). Therefore, the San Antonio Police Department is hereby **DISMISSED** from this action.

Defendants subsequently renewed their motions to dismiss as to Plaintiff's amended complaint. ECF Nos. 12, 13. Defendant Mancias again invoked qualified immunity. ECF No. 12 at 1. Plaintiff timely responded, and Defendant Mancias timely replied. ECF Nos. 15, 16, 17. Defendant City of San Antonio filed an untimely reply, tardy by one business day. ECF No. 18; *see* L.R. CV-7(e)(2) (setting a seven-day limit for replies). While the City's reply was one day late, the Court will nevertheless consider it, although the Court cautions the City to pay closer attention to deadlines going forward in this case. *See Calderon v. Bank of N.Y. Mellon*, No. 5:17-CV-933-DAE, 2018 WL 8546113, at *1 n.2 (W.D. Tex. May 15, 2018) (considering reply brief that was filed one day late). Accordingly, this matter is ripe for the Court's decision.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." Fed R. Civ. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery." (internal quotation marks and citations omitted)).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citing *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1102 (D.C. Cir. 1985)). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions" (citation omitted)). Further, when a defendant has invoked a qualified immunity defense, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (alteration in original) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)).

## II.    Analysis

### A.    Defendant Mancias' Qualified Immunity Defense

Qualified immunity protects public officials from suit and liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addressing whether qualified immunity applies, courts engage in a two-step inquiry: determining (1) whether a federal statutory or constitutional right was violated on the facts alleged; and (2) whether the defendant's actions violated clearly established rights of which a reasonable person would have known. *Id.* at 623–24 (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)). The two steps of the qualified immunity inquiry may be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the Court begins with the second step of the qualified immunity analysis: whether Plaintiff's narrative of the facts in the complaint "constitutes a violation of clearly established

law." *Goodale v. Bundy*, No. SA-22-CV-00031-XR, 2024 WL 4034187, at *4 (W.D. Tex. July 22, 2024). Pursuant to that inquiry, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (cleaned up, citations omitted). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Clearly established law is not determined "at a high level of generality." *Id.* at 742 (citations omitted). Instead, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). The Court must look at the specific context of the case, given the difficulties officers may encounter in the field trying to determine how relevant legal doctrine applies to the various situations they confront. *Id* (citing *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223*).*

According to Plaintiff's version of the facts, after she fled, Officer Mancias chased her and "pushed her on the upper part of her back with one or both hands with viciously excessive force, intentionally and deliberately thrusting Plaintiff up and off her feet and to the concrete ground." ECF No. 11 at 4. Setting aside the legal conclusion that Officer Mancias used "viciously excessive force," the Court finds that the video evidence does not otherwise refute Plaintiff's version of the facts. Nor does it affirm them: at the critical moment before Plaintiff falls in the video, Officer Mancias' hands are not visible, and no direct contact between Officer Mancias and Plaintiff is discernible. *See* BWC at 22:20:00–22:20:03.

The parties debate whether the shadows that Officer Mancias and Plaintiff cast on the ground during the chase show that they made contact or not, and what manner of contact they may

have made. *See* ECF Nos. 15 at 3–4; 17 at 3–4. However, at the motion to dismiss stage, a court should not be in the business of decoding the meaning of shadows. The simple fact is that the video does not clearly display whether and how Officer Mancias made contact with Plaintiff. He comes very near to Plaintiff before she falls but the video does not conclusively show whether Plaintiff may have fallen on her own, whether she may have fallen after Officer Mancias tried to pull her back, or whether she fell due to Officer Mancias pushing her, as she alleges. ECF No. 11 at 4; *see also* BWC at 22:20:00–22:20:03. Among these possible interpretations of the video, the Court must adopt the latter version, as that is the version of the facts Plaintiff alleges to be true. Further compelling the conclusion—at this stage—that Officer Mancias pushed Plaintiff is her allegation that her friend Santos witnessed him do so. ECF No. 11 at 5. Therefore, for purposes of this order, the Court assumes that Officer Mancias pushed Plaintiff to the ground to stop her flight.

Thus, it is Plaintiff's burden to advance clearly established precedent that would have made a reasonable officer consider it "beyond debate" that pushing her to the ground to prevent her escape was unreasonable and excessive. *See Mullenix*, 577 U.S. at 13–14 ("The relevant inquiry is whether existing precedent placed the conclusion that [the officer] acted unreasonably in these circumstances 'beyond debate.'" (quoting *al-Kidd*, 563 U.S. at 741)). Binding law sets a high bar in this area: "Because the plaintiff must point to a case almost squarely on point, qualified immunity will protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Plaintiff's problem is that she has advanced no such case. Indeed, her complaint cites no legal precedent whatsoever in her claim against Officer Mancias. *See* ECF No. 11 at 5–6.

In her response to Defendant Mancias' motion to dismiss, Plaintiff argues that *Tennessee v. Garner*, 471 U.S. 1 (1985), clearly established her right to be free from Officer Mancias' use of force in this case. ECF No. 15 at 6. Plaintiff proposes that *Garner* clearly established that: "(1) apprehension by use of deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement; and (2) deadly force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." ECF No. 15 at 6.

But the Supreme Court and the Fifth Circuit have both rejected similar attempts to employ *Garner* at "a high level of generality." *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *see also Goldston v. Anderson*, 775 F. App'x 772, 773 (5th Cir. 2019) (plaintiffs must go beyond "*Garner*'s general standard" and demonstrate that the use of force "was clearly unreasonable under the Fourth Amendment in the specific situation the officer confronted"). It is error for a court to conduct the qualified immunity inquiry based upon generalities rather than "the specific context of the case." *See Mullenix*, 577 U.S. at 16 (quoting *Brosseau*, 543 U.S. at 198). Where an officer's actions fall into the "hazy border between excessive and acceptable force," the officer remains protected by the shield of qualified immunity. *See id.* at 18 (quoting *Brosseau*, 543 U.S. at 201).

Therefore, rather than relying upon general propositions, the Court must assess whether *Garner*'s specific factual context would have put Officer Mancias on notice that he could not push Plaintiff to prevent her fleeing the scene. In *Garner*, a police officer shot a fleeing, unarmed teenager in the back of the head as he attempted to climb over a fence in the backyard of a house he had burglarized. *See Garner*, 471 U.S. at 3–4.

Plaintiff's case is readily distinguishable from *Garner*. Most obviously, Officer Mancias did not shoot Plaintiff, unlike the fleeing suspect in *Garner*. Further, while the *Garner* suspect was

fleeing the scene of a burglary, Plaintiff was not fleeing the scene of an active crime, but instead had been arrested on an outstanding warrant. These factual differences are enough to rule out the argument that *Garner* clearly established the alleged constitutional violation in this case. *See Harmon*, 16 F.4th at 1167 ("At most, *Garner* prohibits using deadly force against an unarmed burglary suspect fleeing on foot who poses no immediate threat.").

Plaintiff also avers that the situation in this case "is analogous to one where a police officer TASERS a running suspect, causing them to fall uncontrollably, which has also been deemed to be excessive force." ECF No. 15 at 7 n.1. Plaintiff failed to cite a case for this argument, although Defendant Mancias shoulders some of Plaintiff's burden and suggests that Plaintiff may have been referring to *Peña v. City of Rio Grande (Peña II)*, 816 F. App'x 966 (5th Cir. 2020) (per curiam). ECF No. 17 at 8. However, as Defendant correctly observes, any reliance upon *Peña* would be in vain, because it is an unpublished decision which cannot clearly establish law. *Woods v. Harris County*, No. 22-20482, 2024 WL 1174185, at *3 (5th Cir. Mar. 19, 2024) ("This court's unpublished opinions do not clearly establish a constitutional right." (citations omitted)). Further, as Defendant points out, unlike Plaintiff Sealey, the *Peña* plaintiff "was not committing a crime at the time force was used, was not under arrest, and—under the facts most favorable to her—the officers lacked probable cause to arrest her." ECF No. 17 at 8 (citing *Peña II*, 816 F. App'x at 972–73). Added to these distinctions is the fact that no taser was used in this case, unlike in *Peña*. Thus, even if it could clearly establish law, *Peña* would come nowhere near doing so for the facts of this case.

Plaintiff has not proffered any other cases which would clearly establish a constitutional violation here. Therefore, Plaintiff has failed to carry her burden to rebut Officer Mancias' qualified immunity defense. *See Guerra*, 82 F.4th at 285. "Because Plaintiff fails to overcome

qualified immunity on the 'clearly established' prong, the Court need not address the first prong of qualified immunity concerning whether Defendant [Mancias'] conduct was objectively unreasonable." *Goodale*, 2024 WL 4034187, at *6 (citing *Henderson v. City of Dallas*, NO. 3:16-CV-3317-S, 2018 WL 4326936, at *3 (N.D. Tex. Sept. 10, 2018)). Consequently, the Court **GRANTS** Officer Mancias' motion to dismiss Plaintiff's amended complaint (ECF No. 11).

### B.    *Monell* Liability

The Supreme Court made clear long ago that a local governmental entity can only be held liable under § 1983 for constitutional harms that are directly attributable to the governmental entity itself. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Accordingly, a plaintiff suing a municipality under § 1983 must show that "the municipality has a policy or custom that caused plaintiff's injury." *Crull v. City of New Braunfels*, 267 F. App'x 338, 342 (5th Cir. 2008) (first citing *Monell*, 436 U.S. at 689; and then citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). "The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its 'deliberate conduct,' was the 'moving force' behind the violation." *Id.* at 342 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Acts of individual municipal employees do not create liability under § 1983 unless a policymaker has adopted a policy or custom that resulted in a constitutional violation. *See Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002). A plaintiff can show a policy arising from

written policy statements, ordinances, or regulations. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Because it is very unlikely that a plaintiff will document proof of unconstitutional policy or disposition, however, the policy or custom may be inferred circumstantially from conduct. *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). Thus, a plaintiff can show a policy by a custom; that is, "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). Finally, "a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)).

Here, although Plaintiff apparently concedes that the City of San Antonio does not have an officially adopted policy "of overlooking constitutional torts," she alleges that the City has a practice to that effect which is "so common and well-settled that it fairly represents official policy." ECF No. 11 at 7. However, her allegations consist almost entirely of legal conclusions. The only fact she alleges in her complaint related to her municipal liability claim is that the City "deliberately allowed Defendant Mancias to remain on the force despite clear indication that he was incompetent and unfit to be a police officer." ECF No. 11 at 7. Nevertheless, on this threadbare scaffolding, she mounts the following claims of the City's alleged violations:

(A) Using excessive force to carry out otherwise routine arrests or stops;

(B) Using excessive force when such force is not necessary or permitted by law;

(C) Ignoring the serious need for adequate training and supervision of its officers

in regards to the use of force;

(D) Failing to adequately supervise and/or observe its officers; and,

(E) Failing to adequately train officers regarding the availability of alternative means of detaining persons other than the use of force or deadly force; and

(F) Deliberately acting indifferent to the safety and the constitutional rights of the public in adopting these training and supervision policies and customs.

ECF No. 11 at 7–8.

In her response to the City's motion to dismiss, Plaintiff distills these various complaints into two discernible legal claims: (1) a claim that the City ratified Officer Mancias' alleged unconstitutional conduct; and (2) a claim that the City unconstitutionally failed to train and supervise its officers. *See* ECF No. 16 at 2–7. The Court addresses each claim in turn.

(1) Ratification

"A municipality may be held liable for ratifying officers' unconstitutional conduct only in 'extreme factual situations.'" *Estevis v. City of Laredo*, No. 5:22-CV-22, 2024 WL 1313900, at *16 (S.D. Tex. Mar. 27, 2024) (citing *Davidson*, 848 at 395). "Importantly, a policymaker is not necessarily liable for defending conduct later found to be unlawful." *Id.* (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)).

In her complaint, Plaintiff's sole factual allegation against the City is that it allowed Officer Mancias to remain on the police force after the disputed incident. ECF No. 11 at 7. In her response to the motion to dismiss, Plaintiff asserts that "other officers" on the scene failed to intervene or to report the alleged use of excessive force, and the City failed to discipline them or Officer Mancias in any way.[2] ECF No. 16 at 2, 4. Citing *Grandstaff*, Plaintiff argues that "[a]n incident involving the actions and inactions as alleged against [the City's] officers in Plaintiff's First

---

[2] As discussed, *supra*, the video evidence only shows one other officer on scene and the Court does not credit Plaintiff's assertion that two other officers were present. ECF Nos. 11 at 2; 15 at 4.

Amended Complaint is indicative of the sort of reckless and unconstitutional behavior that should give policymakers . . . reason to intercede after learning of such bad acts and actors." ECF No. 16 at 4 (citing 767 F.2d at 171). Plaintiff notes that, when considering a ratification claim, "[t]he court may also consider how many officers and actors were involved." ECF No. 16 at 3 (citing *Fuentes v. Nueces County*, 689 F. App'x 775, 779–80 (5th Cir. 2017)).

However, this case does not involve the sort of "extreme factual situation" that existed in *Grandstaff*. In *Grandstaff*, the entire night shift of the City of Borger's police force converged on the ranch of an innocent third party while in pursuit of a fleeing suspect. *See* 767 F.2d at 165, 171. The foreman in charge of the northern section of the ranch awoke to the sound of the chase and a police bullet that struck the ranch house. *Id.* at 165. As he drove his pickup truck across the property to assist the officers, the officers opened fire on him from two sides, which the Fifth Circuit described as a "wild barrage"; he died before he could be transported to a hospital. *Id.* at 165, 171. The Fifth Circuit noted that the City took no disciplinary action after "this incompetent and catastrophic performance," and "concerned [itself] only with unworthy, if not despicable, means to avoid legal liability." *Id.* at 166, 171. Thus, the court reasoned, "the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger." *Id.* at 171.

"The *Grandstaff* panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations." *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986). The facts of the instant case are not sufficiently extreme to find ratification. That much is clear from the Fifth Circuit's holding in *Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998). In *Snyder*, the court found no ratification liability where a police officer shot the fleeing plaintiff in the back following a high-speed chase. *Id.* at 794, 798. Officer Mancias pushing

Plaintiff in the back would represent a less extreme scenario than the facts of *Snyder*; therefore, Plaintiff's ratification theory never finds its footing.

Moreover, Plaintiff failed to allege that the City of San Antonio *approved* of Officer Mancias' conduct, as required for ratification liability to attach. *See Allen v. Hays*, 65 F.4th 736, 749 n.10 (5th Cir. 2023) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality op.)) (ratification liability requires a showing that authorized policymakers approved a subordinate's decision and the basis for it). Plaintiff alleged that the City "overlook[ed] constitutional torts" and "deliberately allowed Defendant Mancias to remain on the force despite clear indication that he was incompetent and unfit to be a police officer." ECF No. 11 at 7. "But ratification requires the approval of a policy maker, not their mere acquiescence, and [Plaintiff] has failed to allege any facts even suggesting that any authorized policymaker approved of [the officer's] actions." *Benfer v. City of Baytown*, No. 23-20543, 2024 WL 4645878, at *9 (5th Cir. Nov. 1, 2024) (rejecting ratification claim premised only upon a failure to discipline or retrain an officer after alleged misconduct).

Further, Plaintiff's argument that the Court may consider "how many officers and actors were involved" is puzzling here, where only one officer was involved in the alleged use of excessive force, and only one other officer was present on scene. *See* ECF No. 16 at 3 (citing *Fuentes*, 689 F. App'x at 779–80). *Fuentes* itself distinguished *Grandstaff* on the basis that, "[u]nlike *Grandstaff*, this case does not involve the collective conduct of many individuals and multiple bad acts but rather the failure of one individual . . . ." *Id.* at 779. The same reasoning applies here. Plaintiff's references to several other cases are equally bewildering, as the cited cases did not find ratification liability. ECF No. 16 at 3 (first citing *Milam v. City of San Antonio*, 113 F. App'x 622 (5th Cir. 2004); then citing *Barkley v. Dillard Dep't Stores, Inc.*, 277 F. App'x 406,

413 (5th Cir. 2008); and then citing *Davis v. Montgomery County*, No. H:07-505, 2009 WL 1226904 (S.D. Tex. 2009)).

*Grandstaff* "has not enjoyed wide application" in the Fifth Circuit. *Barkley*, 277 F. App'x at 413. *Grandstaff*'s ratification theory cannot be extended to the facts here and Plaintiff's claim to the contrary must be rejected.

(2) <u>Failure to Train and Supervise</u>

A municipality's decision not to train or supervise its employees about their legal duty to avoid violating citizens' rights may rise to the level of an official policy for purposes of § 1983. *City of Canton v. Harri*s, 489 U.S. 378, 387 (1989). To succeed on a claim that a municipality failed to train or supervise its officers, a plaintiff must demonstrate: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Benfer*, 2024 WL 4645878, at *8 (quoting *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023)). "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotation marks and citation omitted). "Deliberate indifference is a high standard that requires a complete disregard of the risk that a violation of a particular constitutional right would follow the decision." *Edwards*, 70 F.4th at 312 (internal quotation marks omitted) (citing *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022)).

"Deliberate indifference is more than mere negligence." *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quoting *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)). It is "a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 410). When a municipality's policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.* (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 407).

Deliberate indifference may be proved either by (i) demonstrating a pattern of constitutional violations that would make it plainly obvious to a policymaker that further training was necessary, or (ii) through a single incident "if a plaintiff can prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Cantu v. Austin Police Dep't*, No. 1:21-CV-00084-LY-SH, 2021 WL 5599648, at *5 (W.D. Tex. Nov. 30, 2021) (first citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018); and then citing *Sanders-Burns*, 594 F.3d at 381), *report and recommendation adopted*, No. 1:21-CV-84-LY, 2022 WL 501719 (W.D. Tex. Jan. 24, 2022). "Because the standard for municipal fault is a stringent one, a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Peña v. City of Rio Grande (Peña I)*, 879 F.3d 613, 623 (5th Cir. 2018) (cleaned up) (citing *Connick*, 563 U.S. at 62).

Plaintiff's claim falls short because she does not allege any facts "about what training [the City] provided or failed to provide." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015). Contrary to Plaintiff's grievance that the City is inappropriately asking for "more" than can be expected at the motion to dismiss stage, "[t]o survive a motion to dismiss, Plaintiff[ ] must plead facts showing that the City . . . was deliberately indifferent in adopting inadequate training procedures and allege with specificity how a particular training program is deficient." *Cantu*, 2021

WL 5599648, at *6 (citing *Zarnow*, 614 F.3d at 170); *see also Soto v. Monge*, No. EP-23-CV-256-KC, 2024 WL 2794062, at *10 (W.D. Tex. May 31, 2024) (quoting *Reyes v. Greer*, 686 F. Supp. 3d 524, 544 (W.D. Tex. 2023)) ("[A] failure-to-train claim requires allegations of specific problems 'in a particular training program.'").

But Plaintiff's complaint goes no further than making conclusory allegations that the City inadequately trained its officers regarding the use of force. *See* ECF No. 11 at 7–8. There are no specific factual allegations regarding deficiencies of the City's training program. It is thus clear that Plaintiff "has merely styled [her] complaint about the specific injury suffered as a failure to train claim." *Benfer*, 2024 WL 4645878, at *9 (cleaned up) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). That will not suffice. *See Soto*, 2024 WL 2794062, at *10 (citation omitted) (dismissing failure to train claim where Plaintiff failed to plead "specific issues with the existing training programs and a pattern of similar violations").

Additionally, because Plaintiff has not alleged any other incidents that could have formed a pattern putting the City on notice of the inadequacy of its training program, Plaintiff apparently rests her failure to train and supervise claim upon a single incident theory of liability. *See* ECF No. 16 at 6 (addressing single incident theory). The single incident exception is "narrow" and an "exacting test." *Peña I*, 879 F.3d at 624; *see also Liggins*, 52 F.4th at 955 ("The single decision exception is extremely narrow and only applies in rare circumstances." (cleaned up, citation omitted)). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390–91 (citations omitted).

Again, Plaintiff's allegations are too conclusory to state a single incident claim. *See Reyes*, 686 F. Supp. 3d at 544 (cleaned up) ("A plaintiff cannot state a failure-to-train claim by making a

conclusory allegation that it is apparent from the facts of the case that excessive force training was insufficient." (citing *Speck*, 606 F. App'x at 736)). The Fifth Circuit has generally reserved the single incident exception "for those cases in which the government actor was provided no training whatsoever." *Peña I*, 879 F.3d at 624. Plaintiff has not alleged that the City provided no training at all to Officer Mancias, and thus her single incident claim fails. *See Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021) ("The plaintiffs do not allege that the county provided no training, so they cannot show that the county was deliberately indifferent. The district court properly dismissed the failure-to-train claim.").

Plaintiff has failed to state a claim for relief against the City of San Antonio. Accordingly, the Court **GRANTS** Defendant City's motion to dismiss her claims against it (ECF No. 13).

### C.    Leave to Amend

In her response to Defendants' motions to dismiss, Plaintiff requested leave to amend her complaint if the motions were granted. *See* ECF Nos. 15 at 8; 16 at 7. "The district court properly exercises its discretion . . . when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation omitted). Further, a "bare bones request to amend pleadings remains futile when it fails to apprise the district court of the facts that the plaintiff would plead in an amended complaint." *Porretto v. Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024) (cleaned up, citation omitted). Plaintiff's request for leave to amend is threadbare and does not detail the nature of her proposed amendment. Therefore, granting Plaintiff leave to amend would be futile, and the Court declines to do so. *See San Miguel v. Jack*, No. A-23-CV-697-RP, 2023 WL 9062913, at *1 (W.D. Tex. Nov. 16, 2023) (denying leave to amend where plaintiff failed "to set forth with any particularity the grounds for his amended

complaint"), *appeal docketed*, No. 23-50929, 2023 WL 9062913 (5th Cir. Dec. 23, 2023); *see also*

*United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003) ("[A] bare request

in an opposition to a motion to dismiss—without any indication of the particular grounds on which

the amendment is sought. . . does not constitute a motion within the contemplation of Rule 15(a)."

(internal quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant Arturo Mancias' motion

to dismiss (ECF No. 12) and Defendant City of San Antonio's motion to dismiss (ECF No. 13).

Additionally, Defendant San Antonio Police Department is **DISMISSED** from this action.

**IT IS THEREFORE ORDERED** that Plaintiff Samantha Lee-Ann Sealey's claims

against Defendants Arturo Mancias and the City of San Antonio are **DISMISSED WITH**

**PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff shall take nothing in this case against

Defendants. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 15th day of November, 2024.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE